Case number 18-30914, Williams v. Trinity Medical Management. Mr. Rine. May it please the Court. Eric Rine, on behalf of Appellant Michael Williams. Appellant asks this Court to reverse the decision issued by the District Court. The District Court erred as a matter of law on four separate grounds when it granted Hyperion's summary judgment, in order that the defense and indemnity clause contained in the Jones Act settlement agreement was enforceable against Williams. From the beginning, I want to clarify specifically what Williams sought beneath the District Court, as well as here, because the District Court's opinion and order, I think, misrepresents exactly what Williams is seeking. To be clear, Williams isn't trying to set aside the entire Jones Act settlement agreement. He doesn't think that it should be voided, that it shouldn't exist as he entered it. But what he's questioning is the specific interpretation of the one indemnification clause contained within it. But give me exactly his interpretation of that clause. Michael Williams entered the agreement and specifically as to that indemnification clause, it would have only related to tort liability. And what it would not have done is applied to contractual liability between the parties. And I think the rest of the contract makes clear — excuse me, the rest of the settlement agreement makes clear that Michael Williams did not intend to indemnify these third parties in the ongoing litigation in Pennsylvania that he expressed his representations. It didn't mean to release them. When you say, hey, I'm releasing you from each and every all in singular, all material, this and that, and goes on for 10 pages about what you're releasing, and then you say, but I'm still going to sue her, then that's all that means. I can still sue her. That doesn't have anything to do with whether I'm indemnifying you from her suing you. But I don't think that the indemnification provision specifically says that Michael Williams was going to indemnify Hyperion from any third-party claims that were made on it by U.S. Well in the Pennsylvania litigation. How does it exclude it? I mean, because it says any and all claims. What's your best textual hook? Well, I think it's notable in that it doesn't specifically state contractual claims, and it's also important. It says any and all claims. So I think the presumption is any and all claims. But it specifically identifies tort indemnity claims if you go on. Including but not limited to any contribution or tort indemnity claims. Including but not limited to cannot itself be a limitation. Otherwise, but not limited to would be written out of the contract. I understand what you're saying. But when it comes to Michael Williams, who as a seaman is entitled to certain – in order for this indemnification clause to be valid and enforceable against him, it has to have been fully and fairly explained to him. And I don't think Well, he had a lawyer. He had a lawyer. He had a lawyer who didn't interpret that clause in the manner that Hyperion did after the fact. It would require the other side's lawyer to consult with the client. So if he has an inadequate attorney who doesn't explain things properly, that's typically on that attorney. I'm not saying he did in this case. I'm just saying if, then that's on him. So a seaman who's just bumbling, fumbling along and asked to sign something, you know, and just sign, you know, if you don't sign this, you won't get medical care or something, obviously there's a lot of protections for that person. And I don't mean to suggest that seamen aren't smart. That's not my point. But that person gets a lot of protection. And this person, Mr. Williams does too, but he had counsel. He had an opportunity to review the document. He had an opportunity to be counseled on it. It says any and all claims. He knows about this something that is being unfair to the seaman. I realize it's not a good deal for him, necessarily, but why is it unfair to him? Well, I think what that's doing is almost reversing the burden on who it is that has to prove that this indemnification provision was fully and fairly explained. And it's not on Michael Williams to prove the negative of that. Rather, Hyperion is the party who wants this provision to be enforced against Williams. It's their burden to show that it was fully and fairly explained to him. But just to be clear, your best textual hook is the included but not limited to, or do you have another textual hook you want to point us to? Well, I think when we're specifically speaking about the indemnification provision itself, I think the absence of referencing contractual indemnity within that is important. But then I think there's also the importance of looking at the other clauses within the settlement agreement that provide further guidance as to what the party's intended within that specific indemnification paragraph. Are you talking about the release or something else? Both. Both the reservation of the ability to pursue claims against the Pennsylvania defendants. And then when we specifically look at what the consideration Michael Williams was receiving was for, it's not for taking on this indemnification burden of the third parties in the Pennsylvania litigation. What in the text tells us that the consideration is limited in the way that you're describing? Well, if we specifically look towards the consideration paragraph, and Michael Williams, quote, does hereby release, remise, and forever discharge Trinity and Hyperion from any and all liability that may be owed to him that arises out of or is in any way connected with his employment with Trinity and Hyperion, his work on the land rig in Lycoming, Pennsylvania, the January 5, 2014 incident and injury described above, and any other accident or injury during the course and scope of his work for Trinity and Hyperion. And that sentence, excuse me, that paragraph begins on the first page of the settlement agreement and it carries over on to the second. And what's noticeably absent from that paragraph, indemnification provision, saying that he's receiving this consideration or separate compensation, which is what's required by the Fifth Circuit's Parks case to specifically take on this indemnification obligation in the Pennsylvania lawsuit. When we look at what occurred before the district court, there's a complete absence of evidence that Hyperion has met the burden on it under the Parks v. Dowell division of Dowell Chemical Corp. case to both fully and fairly explain this indemnity provision to Williams as well as provide additional compensation to Williams for the relinquishment of these rights. And it was not shown that either of these occurred, so the district court erred in that decision, and her issuing her order requiring Williams to indemnify these third parties violates the Parks precedent. Additionally, the indemnification provision within the contract does not satisfy the notice requirements that are imposed by maritime law. The way the district court examined this contract, excuse me, this agreement to specifically focus solely on the indemnification provision, she didn't read all the provisions contained within it as a whole to try and determine the meaning. And there's a principle of indemnity law that the contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage, and that's the focus solely on the indemnification provision and didn't look at the remainder, didn't look at the fact that the consideration makes clear that Williams was only receiving money for the relinquishment of his Jones Act claims against his Jones Act employer, and that it didn't include taking on this obligation in the Pennsylvania litigation to indemnify them. And then you look at the specific reservation of rights contained within the settlement agreement, quote, it is specifically understood and agreed that Michael Williams reserves all rights he may have against inflection energy LLC and U.S. Well Services LLC. And then it continues. Inflection energy LLC and U.S. Well Services LLC are not released parties. So the district court didn't consider those provisions of the settlement agreement. Sotomayor, you're saying they are released parties. Right. But respectfully, I don't think you can read those provisions within the settlement agreement and reconcile it with him then having to turn around and indemnify those same entities that he's going to continue suing in Pennsylvania. Why do they have to be coextensive? Well, they have to be coextensive because I don't think you can reconcile them. It doesn't make sense for a Jones Act seaman to say, I'm going to reserve my rights against these parties, and then a provision within it saying, I'm also going to pay the defense and indemnify those same parties in that ongoing litigation. You can't read those together. Other parties. Right. Okay. The other parties in Pennsylvania that Hyperion is claiming due to the Hyperion's contractual relationship with those parties that Michael Williams now has to indemnify. Right. So, I mean, he's releasing Hyperion and indemnifying Hyperion. Why is that so inconsistent? The way that Hyperion's read it is that they've made it contractual indemnity from the Pennsylvania parties down to Hyperion, down to Michael Williams, which I don't think when you read all the provisions within the settlement agreement is what he intended. The parties knew that there was a third-party claim pending in Pennsylvania at the time. They knew that U.S. Well had filed a third-party complaint against Hyperion seeking defense and indemnity costs. To read the indemnification provision as Williams accepting that, there's no way to read it in a manner where he would still be reserving his rights. That makes sense. And I think when we look at the fact that these conflicting provisions within the settlement agreement exist, the consideration solely being for the Jones Act claim, as well as the reservation of rights against the parties in the third case or, excuse me, the second case pending in Pennsylvania, I think that creates a conflict. And because of this conflict that exists, I don't think the indemnification provision is stated unequivocally as it has to under the Corbett standard. It's not clear that he's going to have to be indemnifying these third parties in that case that he's trying to proceed against. When the indemnification provision is interpreted in the manner that was accepted by the district court, the clause is unworkable and void as against public policy. There's no realistic way to enforce the indemnification provision. What it does is require a word of the Court to defend and indemnify the very parties that he's expressly reserving his rights against. I think it's dangerous precedent in Seamith personal injury law to allow to require this word of the Court who enters a settlement agreement that expressly reserves his rights against the parties to then turn around and have to indemnify and defend those parties. He's not defending and indemnifying those parties. He's defending and indemnifying Hyperion against those parties, right? Or am I missing something? No, it's accurate that the the... Okay. That's different. But at the end of the day, it's the exact same because he's going to have... Well, depending on how that all works out, right? There may be defenses to the lawsuit against Hyperion and so on. So, I mean, perhaps ultimately it could be that, but that doesn't mean it has to be. Well, it doesn't mean it has to be, but in the event that the Pennsylvania court determined it was, then it would require Michael Williams to defend and indemnify those parties, the very parties that he's suing. Defend and indemnify the parties he's suing's suits. In other words, the people they're suing. It's not he's not defending and indemnifying the people he's suing. He's defending and indemnifying the people that the people he's suing are suing, the third parties. So, you're conflating two things. Maybe in the end, it does work out to be that he can't really sue them because he would have to pay him what he gets from them. But we don't know that at the outset. I don't think it's conflating it when we... Hyperion has already turned to Michael Williams and said, defend and indemnify us, and specifically within that third-party complaint in Pennsylvania, U.S. Well has turned to Hyperion and said, defend and indemnify us. We already know what's going to occur if the court in Pennsylvania allows it. So, it's not, it's, I don't think it's conflating the issues or combining them. We already know that what's going to occur in the Pennsylvania litigation, if the court allows it, is Michael Williams is going to have to defend and indemnify the very parties that he's trying to sue within it. I think the district court's imposition of the indemnification duty, a large part of her order was related to what the district court determined was underhanded conduct on the part of Williams' counsel in filing two lawsuits. And a lot of that, there's speculation on the part of the district court as to the intent of plaintiff's counsel, and despite there being no evidence that anything underhanded occurred or any violation of any rules occurred, she placed great weight on plaintiff's counsel's decision to file two lawsuits initially, separating out the Jones Act claims against the Louisiana-based defendant, the employer of the Louisiana plaintiff, and filing separately the specific premises liability claims that were as a result of the Pennsylvania incident. And I think it's important that there's no evidence that anything counsel did was improper, yet despite this, the district court placed great weight on this decision, and I think it is what resulted in this indemnification provision being read by itself without the rest of the agreement being looked at, which is in violation of Fifth Circuit precedent. Thank you. Okay. Thank you. You have reserved time for a vote. Good morning. Chip Duncan on behalf of Piper and Trinity. The first thing I want to address is we keep hearing, Warder, the court's semen. At the time the district court issues its ruling, there was never a determination of semen status. In fact, a motion for summary judgment of semen status was filed a week before mediation was held in this matter, and the case was subsequently settled at the mediation. So the issue of Jones Act status is not before the court. Well, we can't construe him as not a semen if we don't have a finding that he isn't, right? The way the motion was fashioned. He's alleged that he is. Yes, he has. And the way the motion was fashioned in the lower court was, regardless of whether you use the heightened standard under the Jones Act or whether you just do plain contract interpretation, you're going to reach the same result. This was a gentleman who slipped and fell in the middle of Pennsylvania on ice on a concrete sidewalk, I believe. So our argument at the time. But it's a summary judgment. Correct. I mean, checking to make sure, because you're so in a summary judgment, you take allegations as true, you, you know, so on. I mean, you don't just say, well, you didn't. And the court addressed that. It wasn't a finding on something doesn't mean that that is a finding against him. I guess you could say if he put on no evidence that he was a semen, then maybe he would lose in a summary judgment context. But you're saying that wasn't really litigated. So then don't we have to sort of assume, argument, oh, he is a semen? And even if you do, you still reach the same result. Okay. Let's get to that argument, that even if you do. Let's assume, arguendo again, that he had incompetent counsel. Then how can you all prove that he was properly advised on the impact of the contract he was signing? At the district court level, there was never an argument raised of incompetent counsel, inadequate legal advice, insufficient medical advice, any fraud or duration of things that normally come up when a semen release is attempted to be broken. As Mr. Rohns has already said this morning, they're not seeking to set aside the release. They just want to exclude three or four lines on the indemnity section they don't like and it's not favorable to them. So they have not asked the district court to set aside the release. Narrowed down to its basic, this is a simple contractual interpretation. I believe the district court did an excellent job of parsing Mr. Williams' case out when compared to Corbett. Corbett's one of the older cases on contractual indemnification. There's significant differences between this case and Corbett. In Corbett, the indemnitor was asking the indemnity to indemnify some undisclosed third party. Here at the time of the mediation and a week later when the settlement agreement was confected, there's no unknown third party. Mr. Williams had already sued U.S. Well and Inflection up in Pennsylvania. That came to light before the mediation. That's why this was included, this indemnity language was included in the release is because Hypern didn't want to pay twice for the same entry, because they knew and it was already pending and the same counsel that represented Williams in Pennsylvania in the premise liability suit was representing them in Louisiana in the Jones Act suit. They didn't want to pay twice for the same entry, which is what would happen if they had not included the indemnification clause, which counsel doesn't even argue is ambiguous. It's clear. What the argument was in the district court was, well, that really wasn't our intent. Well, you took the money, you signed it, you haven't argued incompetent counsel, so you need to enforce the terms of the agreement. I think future ---- Well, what about the argument that that's inconsistent with saying we're still going to sue these other people? They had already sued them at the time they entered the agreement. Right, but that we're by releasing each and every all in singular blah, blah, blah, we're not releasing these other people over here. And that is clear in the release. They specifically set aside ---- Right. So he's saying it's inconsistent to say we're not releasing these other people over here, but now because of this indemnity, we essentially are releasing them, because if we don't, then we have to pay to pay to pay. He was agreeing to indemnify Hyperion from the third-party claim of U.S. Well that was already present at the time he signed the release. Inflection had never, to my knowledge, asserted such a third-party claim under Pennsylvania law. So it was part of the agreed-upon compensation is that Hyperion wants to walk away from this. But he's saying practically how can he keep suing U.S. Well if he's just going to have to turn around and indemnify them via the indemnity of Hyperion and ---- He can't. Trinity. It's very impractical and he probably, he was advised on that. So that's the consequence. He's saying those two provisions are inconsistent. That's what he's saying. Well, he can still pursue inflection. He may not like the outcome if he pursues U.S. Well. That's the difference. And I think the district court did a good job of pointing out Chief Judge Carl Stewart's opinion in Breaux is that here the person, the entity that Hyperion wanted to be indemnified from was U.S. Well. And that is clear in the indemnification clause. I had to go check my gardeners to make sure. But when you use the phrase any and all, it does have meaning. So if you look at the way the district court distinguished Corbett and Breaux, this case, Williams' case, is much more closely aligned with the facts in Breaux where all the indemnitors, the indemnities is all disclosed. I want to talk for a second about the Parks case. That is easily distinguishable because Parks arises in the context of an employment contract. C&G had what's commonly called in the oil field a company man. And before he goes out to work on a drilling tender vessel, they had him sign a claim for negligence and unseaworthiness. He signed the employment contract without any advice of counsel. And then later they tried to enforce it when he got hurt down the road. That's not the situation here. Williams had counsel all along. This is not a contractual provision. They slipped in an employment contract. So those two cases are easily distinguishable on the facts. Here, Williams had advice of counsel at the time he signed the settlement agreement. Parks had no attorney, and it was an employment contract signed before the accident. I think the real problem here is that Williams just disagrees as to the meaning and intent of the contract, but that doesn't make it ambiguous. And that was pointed out in Judge Stewart's opinion in the Breaux case, where the instrument is so worded that it can be given a definite legal meaning. And I believe the contractual clause, the indemnity clause, that issue here in the receipt and release in the record at page 25, it is not ambiguous and the Court correctly construed it as a matter of law. This agreement also satisfies the notice requirement, be it under Corbett and Maritime law or even under Texas. I believe this agreement, settlement agreement, calls for the application of Louisiana law. Here at the time, this is not where Hyper played got you with Mr. Williams. All the parties sitting at that table when they signed this release knew that U.S. Well had a third-party claim that was not only out there but had been pending out there, and that's the reason the indemnity provision specifically called for the broad any and all claims that may be asserted. As far as the public policy argument and the semen status argument, that's almost akin to a child murdering his parents to say, I need the mercy of the court because I'm an orphan. This gentleman was advised by a very competent, very professional legal counsel who have done a lot of Jones Act cases for a number of years. This is not a situation where this gentleman was. And is that enough proof to say you had a good lawyer, you don't have to prove what he was actually told? I realize that's hard because of attorney-client privilege, but just taking his argument that it's your duty to prove, is it enough to say you had a good lawyer? I think the proof is in the fact the release was not challenged on the basis of inadequacy of counsel. That was never an issue. And that goes to the same laundry list of things the court typically look at if they're going to overturn a semen release, which, once again, is not the relief Mr. Williams, the plaintiff, was seeking in the district court. Williams came into the Eastern District on a declaratory judgment action solely for the purpose of getting a ruling that I can ignore the one clause that requires me to indemnify U.S. Well or Hyprin from the claims of U.S. Well in this litigation. That was the only issue Mr. Williams put before the court. The Hyprin filed a motion for summary judgment on that very issue going, you don't need parole out, but that's when the clear meaning of the language doesn't need interpretation. You don't go to the party's intent. So if you look at the language in Brough and you look at what's in this release, they're very close to each other. This is a far distance from the Corbett where on some purchase order someone was asked to indemnify an undisclosed third party. So if you look at the case level, the district court did an excellent job of parsing out the difference. This case is much more closely aligned with Brough. Okay. Anything else?  I think that covers everything I wanted to, Your Honor. Thank you. Do we have your argument? Now we'll hear some rebuttal. Thank you, Your Honor. What we heard repeatedly during that argument was that counsel, quote, spoke at length about what was explained to Michael Williams. Counsel talked about all this was explained to him. He had counsel. Counsel interpreted the agreement. All of that's completely accurate. But what we know and what the record shows from the sworn deposition testimony of Williams' attorney in that case is that this interpretation of the indemnification provision was never explained. The interpretation of the provision that Williams would have to turn around, go to the Pennsylvania case, and indemnify the very parties he was suing was never contemplated by counsel. We still don't understand it to be interpreted that way. It occurred after the fact when Hyperion decided to read this one provision by itself within the contract. But the record at 608, 609, it's in footnote 7 of our brief, lays out the specific deposition testimony, which talks about what was and was not explained to Williams. Quote, nobody at this firm understands the release to be what your client is purporting it says. It continues on with an explanation. So although the provisions of the settlement agreement were obviously explained to Mr. Williams, this unique interpretation that we still don't read it in that manner? I don't understand why it's so unique that any and all means any and all. I mean, again, I don't know Mr. Williams' educational background or whatever, but those aren't particularly difficult words, any and all, and not particularly legalese or Latin or whatever. So I don't know why that's so difficult. I think it starts with the absence of contractual indemnity being within that clause. And that's the same as in the Corbett case. One of the issues with the indemnification provision in Corbett was the absence of saying it was contractual indemnity, which is exactly the case here. Counsel for Williams has obviously entered and explained numerous settlement agreements to Jones Act seamen throughout the years. We've never had one, similar ones even to this, where despite there being an absence of this contractual indemnification after the fact, someone contractually tries to use that as a contractual indemnification requirement. It's not how we read it then or now. Counsel tried to distinguish Corbett and Parks due to the absence of counsel when those agreements were entered when he was up here, and I just want to address as stated, Williams had counsel, but what was never explained to him was this interpretation of the agreement. It was never interpreted that way by the firm, and thus Williams never had it fully explained to him that he was somehow going to have to then turn around and indemnify these parties in that litigation. And then the Bureau case, I think the importance of the Bureau case for this panel is that what Bureau actually said should occur is when looking at this, all the provisions of the agreement should be read together. And I don't think that the district court's order indicates that she did that. She focuses on the singular indemnification provision, doesn't look at what the consideration specifically was for, and doesn't examine the fact that he's reserving these rights against these Pennsylvania parties. If you don't have any more questions for me, I will be done. And the appellant requests that you reverse the decision of the district court. Okay. Thank you. We appreciate both sides' arguments. The case is under submission, and this concludes this sitting for this panel. We appreciate it. Thank you.